LEXINGTON REALTY CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 4639.    Promulgated June 27, 1928.

*George L. Denny, Esq.*, and *Milton W. Mangus, Esq.*, for the petitioner.

*W. Frank Gibbs, Esq.*, for the respondent.

852

## OPINION.

MURDOCK: The petitioner has alleged that the Commissioner erred "in not allowing as invested capital a common stock issue of $59,700, which was surrendered in the purchase of real estate." It has evidently misunderstood the nature of invested capital as defined in the statutes (section 326(a) of the Revenue Acts of 1918 and 1921) and has meant to allege error on the part of the Commissioner in disallowing as part of the petitioner's invested capital the cash value of tangible property paid in for $59,700 par value of its common stock. We do not know what amounts the Commissioner has allowed the petitioner as invested capital during the two taxable years but in his answer to the amended petition the Commissioner admits that he has disallowed the petitioner's claim for an addition to its invested capital of the above amount of $59,700 on the ground that "no cash tangible property or other thing of value was paid to the company in exchange for the said common stock." Therefore, two questions have been raised—whether or not any tangible property was paid in to the petitioner in exchange for its common stock and if tangible property was paid in therefor, the actual cash value of such property.

We have set forth in the findings of fact the details of the transaction as it was finally carried out. It is seen that Breed, Elliott & Harrison, having an option to purchase the property in question, agreed to assign it to the petitioner for certain considerations. In its purchase of the property the petitioner transferred certain things. It issued $80,000 first preferred stock for $75,000 cash which Breed, Elliott & Harrison turned over to the Realty Investment Co. In

addition the petitioner issued to the Realty Investment Co. its entire authorized second preferred stock of a par value of $30,000, $5,000 thereof for cash and the remainder as part of the purchase price, and finally it issued $59,700 par value of its common stock to Breed, Elliott & Harrison.

All the transfers occurred at the same time and as part of the same transaction and looking at the substance of the whole transaction it is apparent that in purchasing the property the petitioner turned over $75,000 in cash, $25,000 par value second preferred stock and $59,700 par value of common. In other words, regardless of the identity of the persons to whom the cash and the various kinds of stock were paid, the petitioner parted with cash and stock of the above amounts in return for which it received property having an actual cash value of $162,437.50. It therefore follows that tangible property having an actual cash value of at least $59,700 was received by the petitioner in return for its common stock having a par value of that amount. See *Magee Furnace Co.*, 11 B. T. A. 1216.

We have found as a fact that the actual cash value of the property itself was $162,437.50, representing a value of the land of $37,437.50 and of the building of $125,000. It is true that the Realty Investment Co. agreed to sell the property for $75,000 cash and $25,000 par value second preferred stock, and that this was the total consideration it received. These facts without any further evidence would indicate that the owner's valuation of the property, namely $100,000, measured its cash value, but in our opinion the weight of the evidence points to the higher value. The petitioner has offered the opinion testimony of two witnesses, one of whom, Martindale, estimated the value of the property to be $165,000. He was in the real estate business at the time of the transfer and prior thereto, and had been engaged for some years in renting apartment houses. His idea as to value was based to a certain extent upon the opinion of others and as a stockholder of the petitioner he had some interest in this proceeding. However, the other witness, Cruse, had had an extensive experience in the appraisal of real estate in the city and had examined the property a month before the transfer. His opinion as to value is therefore entitled to serious consideration. He estimated the cash value of the property at the time of the transfer to be the same as that found by his appraisal, or $162,437.50, the land being valued at $37,437.50 and the building at $125,000. Upon cross-examination the respondent developed the fact that at the time the building was constructed in 1901, the district had been a desirable one for private residences, and that its character had changed at the time of the transfer. However, the witness has taken this fact into consideration in forming his opinion and there is no evidence to show either the

original value of the building or that the value of the land had decreased between the date of construction and the date of transfer. The respondent has offered no evidence to contradict the opinion of the witness and we see no reason to doubt its reliability. In addition to the opinion testimony, the petitioner has offered the appraisal made at about the time of the transfer by Cruse and another experienced real estate man, in which the value of the property was estimated at $162,437.50. This appraisal was based on existing facts and is not open to many criticisms directed against a retrospective appraisal.

We find that the amount of $59,700, representing the cash value of tangible property paid in for $59,700 par value of its common stock should be considered in the calculation of its invested capital for the taxable years 1920 and 1921.

The petitioner has also alleged that the basis for depreciation for these years in the determination of the Commissioner was too low by $60,000. We are unable to determine that the Commissioner erred in respect to the amount of depreciation which he allowed. There is no evidence as to the cost used by the Commissioner in his computation of the deduction and the only stipulation of the parties is that the amount of depreciation allowed for each of these years was $3,714.38. The sole business of the petitioner was the operation of the Lexington Apartments. The building when acquired by the petitioner had a value of $125,000 and an expected life of thirty-four years. Using this value and basing the allowance on the number of years of expected life, we arrive at an amount for depreciation which is less than the amount allowed by the Commissioner. So far as we know the petitioner may or may not have had other depreciable assets on account of which the allowance should or should not be increased. Consequently, we will not disturb the Commissioner's determination on this point.

*Judgment will be entered under Rule 50.*